We will be hearing two cases today, and we have with us Judge Randall who is participating by video. I gather that with some technological glitches, the parties aren't able to see Judge Randall, but I believe you will be able to hear her and we can see her, so we will do our best to coordinate and ensure all are able to participate fully in argument that way. So with that, we'll call our first case for today, Elfar v. Township of Holmdel, and we will start with you, Mr. Santagata. Thank you very much. Good morning. May it please the Court? First, I would like to request two minutes on the phone.  Thank you very much. Again, Your Honors, Justin Santagata from the firm of Cooper Levinson for the appellant in Del Elfar. I'd like to start our argument today actually with the presumption of disfavor, which was an issue raised by the district court in its opinion below, and our opinion is that the presumption of disfavor infected the entire analysis of the district court's analysis of malicious prosecution. So I want to start with that, and then I'm going to actually back out to each stage where we allege a seizure to have occurred on malicious prosecution. So let me start with the presumption of disfavor. As we set forth in our brief, we have a couple problems with the district court's use of the presumption of disfavor. Number one is that it's not supported by the common law in the context of a constitutional tort. As we set forth in our brief, there's a divergence in the common law when you distinguish between who is the instigator of the prosecution, whether it's a private party, a civil litigant, or a government official. And so when you go from that, you go to Blue v. Lopez, which was the 11th Circuit decision, which rejected the presumption of disfavor and said that 42 U.S. 1983 is not a disfavored cause of action, so we should not assume that malicious prosecution is disfavored as a constitutional tort. Let's assume that it's not a disfavored cause of action. Nonetheless, we need to find that there was a seizure, and you are pointing us to a number of restrictions that took place in advance of the second trial. Does it matter for purposes of finding a seizure whether the first conviction was vacated or not pending that second trial and when it was vacated? It's true, actually, Your Honor. The legal answer is no, and the second answer is even if it does matter, there's a clear hole in the record as to what happened with the second retrial and whether the actual sentence was vacated. Judge Thornton, when she reverses the municipal court, says the sentence was vacated. The municipal court, in going on to the retrial, says that there's going to be a resentencing. Mr. Alfort is indeed resentenced at the end of the second trial, so we think there's a factual issue in terms of what actually happened, and we can't tell. And not to get to the issue of what happened with discovery, but at the outset of this case, we actually subpoenaed the municipal court and tried to get the full record of the case. We have a partial record of the case. Should we remand for the district court to make a finding on this? Yes, Your Honor. That's part of our position. If there's a factual dispute about what happened in the municipal court, we should have discovery and determine what happened. Now, we may not be able to tell. In all honesty, an order may have been forgotten to be entered. Maybe it wasn't submitted. I can't tell you for sure that there will be an answer if there's discovery, but we can say for certain that there was no discovery, and we don't have the full municipal court file. All you can do without a subpoena is request what the municipal court will give you. How can it be? I appreciate that the municipal code seems to make it discretionary whether a prior conviction has been vacated or not in the language that it uses, but how can it be as a matter of double jeopardy that you could go forward and have a second trial if the first conviction wasn't vacated? I agree with you, Your Honor, and that's what Judge Thornton says in her opinion. I'm simply conceding, because I can't tell you, that there was ever an order entered that the conviction was vacated. I'm not going to make up facts or say I know something I don't know. I believe, based upon the reading of the transcripts and what transpired, that it was vacated. It was intended to be vacated. He was retried, subject to jeopardy, and then Judge Thornton says that in her review of the record in her opinion. But for me to answer to you that there is an order or it was definitively vacated, that would be wrong of me, Your Honor. I don't know that for certain. Can you please rewind that, another? Oh, sorry. Yes, Your Honor. I'm looking at the appendix, page 140, 141, where you allege the seizure facts. When did these things happen? I guess the first question is what is the relevant time period for purposes of seizure as far as you're concerned, and when did these things happen, and were the appearances that you cite, 17 times he was required to appear, were these appearances where if he did not appear he would be subjected to jail? Is that what we are to infer? Is that correct, or were they mere notices? A couple questions there, Your Honor. I'm going to try to take them in the order that you presented them. First, in terms of the stages of seizure. Sorry, I keep looking to talk to somebody. But the stages of seizure, Your Honor, we allege that on the first prosecution, which ended December 4, 2017, the nature of the seizure was the number of appearances, the seizure of his car, and his arrest, which he was detained for about an hour after he was charged. That's the first stage. For the second retrial, we allege, again, it was the number of appearances. And then also in his abstract and in his driving record, he was suspended from driving pending the entire retrial through December of 2018. And that's in his abstract. And there's a consent order in the record that imposed restrictions on his liberty pending retrial. So that's the second stage of seizure that we're alleging. And then the third stage, admittedly a unique issue, is that under New Jersey law, in the unique context of this case, it is our position that Mr. Alfar's trial was not concluded until Judge Thornton rendered her disposition. And for that, obviously, the parties are arguing about what State v. Robertson says in the New Jersey Supreme Court case. But I would first actually direct the Court to the rule on de novo appeal to the Superior Court. The rule, which is in Robertson 323A, E and F both speak in terms of a trial. They speak in terms of a trial still occurring. And E in particular says disposition by the Superior Court. It doesn't say reversal. It doesn't use the language of an appeal. It says convicted or acquitted. That's what the rule says. So under the structure of New Jersey law in this unique context, admittedly unique, his trial continued through the de novo appeal. As to your Honor's question about the appearances, under New Jersey law number one, he was required to appear. Yes, it is our position that he was subject to arrest or contempt for not appearing. Would that have actually happened? Probably not. I'm not going to represent that that happens when you fail to appear once, accidentally you don't show up. You don't generally get charged with contempt. But he was required by law to appear. The New Jersey rules of court require him to appear. And we think that is a significant distinction between the other cases in this field. In DiBella, which as I know discussed at length in this appeal, in DiBella, all DiBella talks about is the trial. That's all DiBella really talks about. We don't know from DiBella how many appearances were made, what the pretrial appearances were. It simply says the appearance at trial was not a seizure. The out-of-circuit cases, Burton and DiPietro, both don't really speak in terms of the multiplicity of pretrial appearances. And both those cases appear, though we don't know for sure, that they might have involved a summons that didn't actually require an appearance. That's also something that could be different in these cases. If you get a parking ticket, you can just pay it. You're not seized. You're free to leave. If we're using the free-to-leave analysis, you can pay it and you can go. You don't have to show up. You're representing that it was subject to contempt or that he would have been arrested. This is not a motion to dismiss, so we need to look to the complaint for what it tells us about the consequences of his non-appearance, don't we? Your Honor, I would answer that this is actually a legal issue. This is in the rules of court and it's in the summons. It's Rule 7 in the municipal court rules as to he has to be present at every stage of the proceedings. So for us to plead that he would have been held in contempt, I would be pleading something that is unknowable. I mean, he didn't fail to appear. He showed up every time. In fact, he showed up sometimes when his attorney didn't. So to say that we have to plead that he would indeed have been held in contempt is contrary to how courts usually work. You don't always hold someone in contempt. You don't always issue a summons. Sometimes you just issue another notice and say, come back, you forgot to come. So for me to stand here and say that he would have been held in contempt every time, that would be unfair for me to say that, Your Honor. But there has to be a threat of contempt or arrest. I mean, going back to Justice Ginsburg and Black, there has to be the threat. And did you not have the obligation to plead that in your complaint? I think that's further what Judge Krause was asking you. No, Your Honor, because our position is that the threat is in the summons itself. You have to appear or there might be penalties against you. And the law requires you under the rules to appear. So to say factually that there was an affirmative threat in a specific case is not how the summonses work. You're charged with appearing and the summons says you must appear. There could be penalties if you don't appear. To take it to the next level would be a factual allegation that cannot be made. Are you arguing, in other words, that we should take judicial notice that by operation of law, failure to appear can subject someone to those consequences? Yes, Your Honor, and that is the rule that we cited in our brief. We'll cite it in the new rules. A defendant is required to appear every time they are summoned for the case. And even if it's a pretrial conference, even if it's an argument on a motion, the defendant is required to be there. And again, I don't want to misrepresent to the court that in practice, if you don't appear one time, that you're going to get in trouble. The point is Mr. Alfor believed, and this is alleged in the complaint, he believed that he was required to appear every time under lawful authority, that he had to appear. That's why he even appears when his attorney is not there, because he didn't want to get in trouble. But that's what he believed. He believed he was subject to lawful authority requiring him to be present at every stage of the proceeding. Judge Rendon, does that answer your question? Yes, it does. Thank you.  Let me ask you, this issue of the de novo review, in Robinson, that was looking at the standard for review of the stay of sentence. So even though it's a de novo review on the appeal of the conviction, if the sentence remains in place, and that is the very premise of Robinson, then how can you say that it's still pretrial? You've already got the punishment, the sentence, in place, and it would actually be executed if it weren't stayed. Although the standard of review may be de novo, for our purposes in considering whether we're still pretrial, looking to seizure for malicious prosecution purposes, doesn't it function like any traditional appeal? No, it actually doesn't, Your Honor. And again, I'm going to answer your question, but I want to go to the rule first, because the rule expressly says that testimony can be taken by the Superior Court. That's not an appeal. There are standards that have to be used in taking testimony. Sometimes you have to remand. Sometimes you can have testimony. But it's not a traditional appeal. It's not really an appeal at all. But you agree that the sentence remains in place? Yes, Your Honor. I do agree. Well, I agree that the sentence is there until someone files something to stay the sentence, and the presumption is the sentence would be stayed absent an argument by the prosecutor as to why it would not be stayed. So if a sentence is in place and would require a stay not to be actually put in motion at that point, how would you have us distinguish between restrictions that are pretrial and restrictions that are part and parcel of the punishment? I would say the first part of my answer is that, in this case, the rule does. The rule provides that that sentence is essentially no different than a pretrial deprivation. The factors for determining whether the sentence should remain in place are no different than bail. And one of them being harm to the community, the things you would consider if a defendant came before you pretrial and said, Your Honor, I want bail. Your Honor, I want to be let out of jail. I don't want this restriction. It's the same standard of review. The only thing we're getting caught up on here is that the nature of the restriction comes from the municipal court conviction as opposed to a judge pretrial saying you have to remain in prison. But ultimately, the review is the same. And again, when we go to the rule, the rule calls it a trial. The rule says it's a conviction or acquittal. So to say that the conviction is post-trial is really the tail wagging the dog because the rule, in this case, it's not going to be like this in every case. In this case, the rule makes it a trial, Your Honor, and testimony can even be taken. I mean, to call this an appeal is only because the rule calls it a noble appeal. But every other facet of the rule is trial. It's still a trial, and it is an odd duck because the defendant maintains the presumption of innocence. The state still has the burden of proof. And Roberson, while, yes, it is talking about sentencing, says it's a new trial. That's what Roberson says. So our position is that those restrictions considered at that time should be considered in a seizure. I know we've got a couple other topics I think we want to touch on, so let me ask our clerk of court to please add 10 minutes to both sides. Judge Rendell, do you have a question? Yes, I do. But at that hearing, actually, Judge Thornton never held a hearing. Is that correct? Well, she held an oral argument, Your Honor. She did not hold a hearing. And she's not – I'm sorry. Please continue, Your Honor. She didn't treat it like a trial. She did not. My point is that – and I answered this part in terms of practice and not just the rule. It is rare for a judge to treat it like a trial to take testimony. What normally happens is it's an oral argument, it's on the record below, and if there's something to be filled in in the record below, it's sent back to the municipal court. So, yes, Your Honor, it is true she did not actually have a trial. My point is that the proceeding that was put before her was, under the rule, a trial. She chose to take the normal approach of superior court judges, which is to look at it on the paper record and determine whether something was awry. She determined that she didn't have to take testimony. She determined that on the record, including reviewing the video, that it lacked probable cause for the stop, that there was no probable cause to arrest Ms. Ralfar, and that the charges should be dismissed. Had she seen a hole in the record? Has she seen something awry in what happened in the municipal court, which I'll get into in a couple minutes? She could have sent it back, but she didn't, based upon her opinion, feel the need to do that. Is there anything in the record about her conversations with her lawyer as to what kind of trouble the defendant would get in if she did not show up? The answer is no, Your Honor. I could tell you from my personal knowledge as to what occurred based upon talking to defense counsel who handled the case, but the answer is there's nothing in the record, nor, frankly, would I expect there to be a statement in the record, a privileged communication between attorney and client, about the repercussions of not appearing. Your seizure argument, does it depend on whether we agree with you that restrictions remaining in place pending appeal? No. Does that qualify toward seizure? No. Not to repeat my answer to Judge Rendell, but it's three stages. We believe we only have to win one of the three stages to succeed on a remand. So you place a lot of emphasis on the driving restrictions in connection with the conditions before the second trial, but those driving restrictions were the result of a consent order, right? That is correct. And that consent order by your client, whose burden was it if there was to be a motion for a new trial to have that vacated? The consent order itself? The burden for vacating the consent order would have been a motion to, thinking through this, would have been a motion to the Superior Court, which issued the order by Mr. Elphar, or, frankly, conceivably, Your Honor, if the state wanted more onerous restrictions, they could have asked for it to be vacated. So to be fair, the answer is either side could have filed it, but if Mr. Elphar wanted it to be less, then the motion would have been won to Judge Thornton or the presiding judge to reduce the consent order. So why doesn't that negate the significance of those pretrial restrictions as to driving when Mr. Elphar didn't take the step of seeking to have that consent order set aside pending the retrial? So two answers, Your Honor. Number one is that, not to rely upon a technicality, but this argument was never raised below. There was never any argument below about Mr. Elphar's consent negating the seizure element. But more importantly, the consent order was issued prior to the new trial being granted, and our point is that at the time the new trial was granted, the consent order remained in place, but more importantly, the state never fixed, and was required to, never fixed his suspension in the New Jersey database. So focusing on the consent order, which is a different restriction, that was between nine to five during the day, but he was technically suspended. This is in his abstract. He was suspended, could not drive a car in the records of the state of New Jersey through retrial. So factually, Your Honor, and that's all in the complaint, factually, we believe that's a clear seizure. I mean, in 2024, well, back then it was 2016 and 2017, but not being able to drive a car, either significantly during the day or at all, is a seizure on your liberty. Most Americans expect that they will be able to do that, and that is a significant restriction on liberty. Can I ask one additional question on this? Of course. Again, I'm looking at your complaint, which says he was required to appear no less than 17 times. I am assuming, and you said it's your position that he was required under pain of contempt or whatever. Are there documents to reflect how he was required to appear and when he was required to appear? Because although you say there are three stages that matter, if we find that there aren't, that only one or two stages matter, we'd like to know exactly when he was required to appear and if the summons states that. Are there documents? You said it's your position. Are there documents? Are there actual summonses and notices? Yes, Your Honor. The summonses appear at page 558 of the appendix, and they require the defendant to appear. And that's in page 558 of the appendix, and it's in the record. And to this point, and to be fair, to this point no one is disputing, not even Homedale, that Mr. Elfar was required to appear as a general matter. The most dispute that's occurred here is that whether some of his appearances were the product of, quote, Mr. Elfar's own litigation conduct. But that would only apply to potential emotions. They argue that it applies to the retrial. But there's no dispute that he was required to appear as a general matter for all the pretrial appearances that occurred in the case. Why were there so many? That's a question for discovery. There were a lot of pretrial appearances, and when we requested these transcripts, we had a record of the dates that we believe Mr. Elfar appeared, and there weren't transcripts on those dates. So we believe there's actually more appearances where he was actually required to appear. And the notices also appear of record in the case, Your Honor. He had about 40 notices that he was required to appear. Obviously he did not appear 40 times, but that is of record in the case. And I can get you the cite. I believe it's the appendix 800, but I can get you the citation. But he had 40 notices to appear in court, and it says there will be penalties potentially if you don't appear. Can I tell you there would be penalties as a matter of fact? No, I cannot tell you that. I would not want to represent it at the court. On the issue of probable cause and non-mutual collateral estoppel, if we are to assume that the defendants were in privity with Homedale prosecutors, you're still seeking to prevent the litigation with regard to the Monmouth County prosecutors that were representing the state. How, between the county and Homedale prosecutors, could there be privity? We're not alleging, well, let me rephrase that. We're not alleging direct privity in the sense that the county prosecutors controlled Homedale or Homedale controlled the county prosecutors. What we're alleging is that, number one, under New Jersey law, under Petrillo, which is cited in our brief, and under Rodriguez, that this issue has been decided, that the New Jersey Appellate Division, not the Supreme Court, but it's still an intermediate court that's supposed to be followed when a federal court is reviewing a state issue, says that this circumstance requires estoppel. Now, if you're asking, as a legal or factual matter, what is the control between the Homedale prosecutor and the county prosecutor, none. I mean, I would not represent to you that there is any. Our position is that the estoppel was complete when the record was completed by the Homedale prosecutor, and when Judge Thornton reversed, she reversed because the record created by the Homedale prosecutor was insufficient to convict Mr. Alfar, and that stops Homedale from relitigating that issue. All the county prosecutor did, and she's required to appear by the rule. That's why the county prosecutor appears. All the county prosecutor did was show up and argue, as Judge Rannell pointed out, show up and argue an oral argument. Every choice, every strategic decision, every piece of evidence, all the testimony was prepared and propounded and put into the record by Homedale and the Homedale municipal prosecutor. We are looking at, in terms of municipal liability, the police chief, you suggest, is a policymaker here. When we're making that determination for Monell purposes, aren't we supposed to look to what authority there is under law rather than de facto for that actor? Well, it could be both, Your Honor, but yes, Your Honor, it would start with the duties and powers of the police chief, but first answer is this issue was not actually argued below, briefed below, in terms of whether he was a policymaker. This comes up only because the district court, with all due respect, has analyzed municipal liability, so in response, on appeal, I set forth in our brief all the ways that there were municipal liability. The police chief is the day-to-day overseer of the police department, and the complaint alleges, unfortunately, that there were substantive ex parte communications that suggest interference in Mr. Alfaro's prosecution. At the pleading stage, that is sufficient to allege both a misuse of his powers and a de facto interference in municipal court, and if Homedel wants to come back on remand and argue that that was outside the scope of the police chief's powers, then they can argue that, but the reason this was put into the record on appeal is because I wanted to set forth that the district court did not even address every basis for municipal liability. There are several that were not addressed, and this one is a straightforward A to B. I mean, this is, unfortunately, an alleged interference, and when you look at the timing of this case, I see my time is up. Do you want me to continue? Yes. Thank you. When you look at the timing of this case, when this issue comes up, November 30th of 2017, as to the municipal prosecutor suggesting that there have been conversations, just the suggestion is problematic, but suggesting there have been conversations between the municipal court judge and the police chief, and then the prosecutor says, she says, I'm caught between competing interests. I essentially don't know what to do. I'd love to resolve the case, but I don't feel I can. That is an inference of lack of probable cause. Why? Because New Jersey law is very clear, and this is Appendix 921. It's very clear. She can't do that unless she believes in a DUI scenario she cannot obtain a conviction, and that's the inference, and that's why we say that the retrial is as much subject to malicious prosecution as the original trial, because the probable cause changed, or there was something that happened that triggered the municipal prosecutor to say, I don't want to continue this case, and she was compelled to. All right, Mr. Snoddy, I don't want to hear from you again. Thank you very much. I appreciate your time. Good morning. May it please the Court, David Schwartz of Schwartz & Posnack on behalf of the appellees. Good morning. If I may, I would like to correct the record about two or three very significant matters that were raised by appellants. One, with regard to the question about whether court notices indicated that your presence was required or that there may be some indication of a threat of punishment, all the court notices are indeed in the appendix, and I would just reference for the Court's attention, there is nothing in these court notices that even says that your appearance is required. Now, that may certainly be implied, but the court notice merely says you're hereby notified that your matters have been rescheduled for the next date and the next time. There is no threat of a warrant for a failure to appear. It's simply a notice letting you know what your new court date is, and if your honors had notice from the transcripts that were included in the appendix, most municipal courts do not know what that new court date will be at the sitting of the current court date, so they'll say, counsel and your client will send you a new notice. They just confirm that you're at the same address, and that's all that happens. Does that really need to be spelled out in a notice for a layperson to understand that failure to appear in court can have significant consequences up to and including imprisonment? I wouldn't disagree with that, but just in terms of the record, I think it was represented that the court notice indicated that there would be consequences or punishment. I just think for clarity, the record should be corrected. If I may, there's another very important correction. When the consent order was entered on March 10, 2017, which did allow Mr. Elphar to continue to drive at designated times during the day, he withdrew his municipal court appeal. That's at APP 431. It's a representation by Mr. Elphar's defense counsel in municipal court indicating that the municipal court appeal, that's the de novo appeal we've been talking about, was withdrawn. And that stayed withdrawn until, I believe, December 2018, when the second trial was concluded and Mr. Elphar was convicted again, based on new testimony that was heard by the officers and stipulated testimony from the first trial before Judge Casey in February of 2017. What significance does that have for us? Once a motion for a new trial is granted, isn't it of necessity? By operation of law, it must be that the first conviction is vacated. What then, other than pretrial restraints, would account for there continuing to be restrictions on his driving or required appearances and the like? Aren't those necessarily characterized properly as pretrial restrictions? No, not in this particular case. And I would acknowledge that, and I can't speak for the other 49 states, but New Jersey does have what appears to be an unusual procedure that may be because your initial trial is a bench trial. In municipal court, you're not entitled to a jury, so this is a sort of like halfway point remedy for a de novo review by a law division judge. But I would suggest to Your Honor that the only way to understand whether a conviction was vacated or reversed or otherwise affected would need to be by some order of a court or some acknowledgement by a court that that conviction from February 13, 2017, no longer stands. Now, it just doesn't make sense that Mr. Elphar would enter into a consent order if merely by filing for a de novo appeal, your conviction vanished into thin air. There would be no reason to do that. Let me clarify, because my question didn't go to the appeal. It went to when it goes back and there's a motion for the new trial granted. Of necessity, when that happens, doesn't that also mean that the first conviction has been vacated? No, it doesn't, because under our municipal court rule 7-10, it gives that judge an option to either vacate, take new testimony, or review the record. So under that rule, which again may be unique to New Jersey, an understanding that that conviction from February 13, 2017 is not vacated. On a retrial, those judges have various options. So I would not agree with that proposition that it by necessity requires that the previous conviction be vacated. And I would further suggest the New Jersey Supreme Court certainly well knows whether a conviction is vacated or not. And the idea that after your municipal court conviction and when you file for de novo appeal in the law division, if your conviction were vacated, why would the New Jersey Supreme Court require a procedure to understand whether or not your driving privileges should be affected or whether you should go back to square one and be able to drive with no restrictions? It just doesn't seem to make sense that the highest court of the state would understand if your conviction were vacated on a new trial or by filing for de novo appeal, why would we even have to engage in this analysis to understand whether or not you would be safe, whether we should allow you to drive unrestricted or with some restrictions? It just simply doesn't make sense to me. So do you agree it's unclear in the complaint and what we have available to us that's properly the subject of judicial notice whether the conviction here was vacated or not in connection with the grant of a new trial? If I understand Your Honor's question, I think the complaint is clear that the conviction was not vacated. It doesn't allege that it was vacated. It doesn't allege that it was affected. It doesn't allege that it was reversed. It simply carries forward and makes the assumption that this is a new trial, therefore everything goes back to square one. Don't we have Judge Thornton saying that it was vacated? I don't believe so. I think Judge Thornton vacated it by reversing. But I don't believe Judge Thornton acknowledged that it was vacated. And respectfully to Judge Thornton, Judge Thornton's pronouncement, if she made such, would not be dispositive of the issue of whether the conviction was vacated because Judge Thornton's take on that certainly wouldn't rise above and defeat the New Jersey Supreme Court, the court rule that requires an inquiry as to whether or not your driving restrictions should be affected. And Judge Thornton's take on that certainly doesn't make the Robertson opinion a nullity. A law division judge, by making such pronouncements, certainly can't just declare that an opinion by the highest court in the state is no longer valid or has no meaning. If I may, I do want to address the issue of appearances in court, and I would like to start by discussing when malicious prosecution becomes triggered. And as we know from Heck versus Humphrey and Wallace versus Cato, malicious prosecution starts when someone is presented to court, and they are held by virtue of legal or judicial process. So beginning with the night of the arrest, which occurred at 2.55 a.m., Mr. Elphar was released at 4 something a.m., a little under two hours, and he was handed summonses when he was released. Judicial or legal process had not begun at that point. Judicial slash legal process begins when he is presented in court and either bound by court or arraigned and released. So we know that Mr. Elphar's first court appearance and his arraignment was waived by defense counsel. There's a letter from defense counsel that's in the record indicating that he's waiving arraignment, entering a plea of not guilty on behalf of Mr. Elphar, and requesting a new court date. So we know, based on that and the transcripts, that the first court date that Mr. Elphar appeared at was on July 25. Then there are some court dates between July 25 and February 13, 2017, which was the date of the first trial when Mr. Elphar was convicted of DUI and possession of CVS. Now, there is an October 24 transcript in the record. Mr. Elphar is not there. So if we discount that, let's just assume for argument that Mr. Elphar was required to appear four times before his trial, maybe five. But if we go back to what I understand is controlling precedent in this circuit, simply attending court does not constitute a seizure. And if we go back to the Gallo decision, and as I understand – Simply attending court. Are you – I mean, we've got some case law here, some pretty important case law. We've got DiBello, we've got Gallo, we have Black. Now, in DiBello, there was a trial. He was forced to appear for trial. So that's a one-time situation. But don't we have Justice Ginsburg and Black saying if you are multiple times, more than once, pre-trial required to appear with a threat under Rule 7, whatever, you're saying there were four times. Why is that not enough? Why does that not fall under Black rather than under DiBello? Well, if I may, I believe Black did not just require court appearances. And I do have to refer to my notes, but I believe in Gallo and in Black, there were significant restrictions beyond simply having to appear in court. For example, in Gallo, the defendant had to post a $10,000 recognizance bond. The defendant was prohibited from leaving New Jersey or Pennsylvania without the permission of the court. In Black, again, I would respectfully have to look at my notes, but I believe that there were significant restrictions on Black. It was not a matter of simply having to go to court for some court appearances and your trial. We adopted Justice Ginsburg's approach. So long as he is bound to appear in court and answer the state's charges, he is equally bound to appear and hence cease for trial when the state employs the less strong arm means of summons in lieu of arrest to secure his presence in court. We have described this analysis as compelling and supportive. Pre-trial restrictions aimed at securing his court attendance are all seizures. I don't believe that Black stands for the proposition that there needs to be numerous different kinds of restrictions. Maybe I'm missing something. Well, I believe that our circuit says, and let me just go back to Dabella. Dabella had no restrictions like Mr. Elphar. Mr. Elphar was never... And said merely attending trial. Correct. Merely attending trial. He was restricted only during the court trial and merely attending trial does not amount to a seizure. Yes, agreed. Now, if Mr. Elphar has to appear for a couple of or say even three or four pre-trial appearances, let's keep in mind, Mr. Elphar has an interest in attending court. He has an interest, the public interest requires or at least expects a person to come to court to participate in the judicial process, perhaps to clear your name, but to participate in a proceeding to render a fair and equitable adjudication of what you're charged with. But he's also required to do that because the state has brought charges against him that he has to defend and we're therefore looking at what the restrictions are before that trial. As Judge Vandell points out, we've adopted Justice Ginsburg's approach in... In Albright. Albright.  And why shouldn't we just track then the Second Circuit's approach where one appearance is something like Dabella, you know, not sufficient, but when you get to, you know, two or three, when you have multiple required appearances, even on a summons, it is sufficient. Well, I would point out though, and I want to address that specific aspect of your question, but in Albright, I don't believe that Justice Ginsburg in her concurrence stated that just going to court was enough to constitute a seizure because indeed in Albright, there were other restrictions on Albright. So I don't know how we can parse those out if you're going to understand Albright as constituting a seizure just for appearing when there were all these other restrictions on Albright. It was considered by Justice Ginsburg as a serious criminal offense. The defendant had restrictions on her freedom of movement, I believe. So there was no separation in Albright that said just going to court constitutes a seizure because there were a whole host of other restrictions on that individual's liberty. What about the one-hour detention that we have in this case? That occurred before judicial process. So that's part of his arrest. He was subject to a warrantless arrest on the roadside for a traffic stop. We know, as I stated, based on Heck v. Humphrey and Wallace v. Cato, the point of demarcation between a cause of action for false arrest, which begins at the moment of arrest until you're released, malicious prosecution begins when you are presented to a court and you are either held or bound over as a result of judicial process. What do we think of the New Jersey Supreme Court's holding that a complaint summons is what charges a defendant for purposes of DUI? Well, that is what you're charged with. That doesn't carry over to being held as a result of judicial process or being seized as a result of judicial process. The charges have then been brought. So how is it not then judicial process to be detained based on the filed charges? Mr. Elphar was not detained as a result of filed charges, Your Honor. I may not be understanding your concern, but Mr. Elphar was simply subject, like everybody else, that's arrested for DUI on the roadside. Those individuals are brought to the police station for testing and for processing. And when all that is finished, they are issued a summons and they are released. So Mr. Elphar was treated no differently than anybody else. And the fact that he was handed a summons, there was no judicial process involved. There was no legal process involved. You may consider this a technicality, but I would also add for the record, courts were not even open on the day that Mr. Elphar was arrested. So nothing could have been filed with the court because it was a national holiday. But putting that aside, for purposes of Malcross, the seizure is focused on when the person, the defendant, is arraigned or presented to court. So, again, that's the line of demarcation. What do we make of New Jersey Court Rule 72-1E1 that provides that a complaint summons serves as the complaint summons or other process for all traffic-related offenses? I don't see that language as altering or affecting the U.S. Supreme Court's understanding or pronouncement, rather, of when malicious prosecution is triggered. And, again, no judicial officer is involved in the issuance of a summons. If Mr. Elphar had been arrested on a warrant, then the situation would be different because a warrant can only be issued by a judicial officer. So, absent that, it's merely a police officer handing a suspect a notice to appear in court. It is not judicial process. It's not legal process for the purposes of understanding this particular claim under Section 1983. So the first time Mr. Elphar appears in court, as I said, was July 25th of 2016. He's not even arraigned at that point. The conditions of his release are not even discussed. The only matter of discussion is that his trial counsel wanted some additional discovery. The judge agreed, and the case was adjourned to some date unknown. So if we start with that first appearance being July 25th, we have a few appearances up through his trial of February 13th. And I suggest, Judge, that this is, if we were to say that just even one appearance was enough, then we would have an avalanche of potential malicious prosecution claims under Section 1983. So what about the additional appearances? And you've raised some arguments as to the driving restriction. But if we combine that with the conditions pending retrial, why isn't that enough? Again, my focus is on February 13th, 2017, Mr. Elphar is now convicted of DUI and possession. And he is rightly sentenced at that time. And we know from our circuit's decision in the Torres case that post-conviction disabilities or post-conviction inconveniences or whatever you want to call it, and I don't mean to downplay it, those do not constitute a seizure for the purposes of malicious prosecution under Section 1983. And that makes perfect sense when you have a sentence that's in place and a conviction that is intact. But let's say, just hypothetically, that we had a clear record where the conviction and sentence were vacated and a case is going back for a new trial. Is it your position that even in that circumstance, that restrictions that are placed on a defendant pending a second trial with the conviction having been clearly vacated, that those are not pretrial restrictions? No, I would agree. If his conviction from February 13th, 2017 were vacated at some point, then if those restrictions maintained, yes, assuming that he had asked for a new trial or maintained his de novo appeal, which he withdrew, but assuming that he had done something to affect that conviction that resulted in an order vacating that conviction, I would agree that if there were any restrictions on his liberty going forward, as long as he were still maintaining court proceedings, yes, those could potentially constitute seizures depending on exactly what they were. Well, then, as Judge Zurich had asked earlier, isn't this something appropriate for fact-finding back to the district court? I don't think it is because the record is crystal clear. He was convicted in February. He withdrew his appeal in March. He asked for a new trial, and the record, by the way, should reflect the reasons for the new trial, according to Mr. Elphar's counsel, was for the very narrow purpose of understanding to what extent other police officers in Homedale had muted the microphone at some point during a roadside encounter of a suspect. So it was really limited to something I would say was not germane to whether Mr. Elphar was guilty and whether muting the microphone in that instance had any effect on whether he was guilty or on any of his rights. It was really kind of like, respectfully to Mr. Elphar, it was really like a side issue, which was almost how his own counsel characterized it. Thank you, Judge Rendon. You know, we are slicing and dicing this, but why should we not adopt a rule that says that the time period not only is through your first conviction, but if you are retried, then the time period up to the point you are retried and convicted should count as well. Why are we slicing and dicing this in this way? Why should we not adopt that rule? This is a very unique situation, but I don't think it needs to rely on whether it's vacated or not. He was retried and then convicted. So we have two convictions, and the second conviction time counts just as much as the first. To answer your question, Your Honor, I don't view it as slicing or dicing or being an actuarial, so to speak, by counting the days. I do believe that if everybody, for example, in New Jersey, that files for a de novo or files for a new trial without affecting their previous conviction, then, again, we would have unlimited malicious prosecution cases. Only if they're granted the new trial. That doesn't happen every day. That doesn't happen every day. That is true, but I'm not sure if the court's indicating it would happen or not happen every time you file for a de novo appeal, which is very common. So by simply filing that appeal, your conviction is not vacated. I'm not sure why we don't ask the litigant to do something to clarify that position and ask that that conviction be vacated. Why is it the state's burden, or in this case, I guess, the township's burden, to clarify his circumstance for the purposes of his license restrictions going forward? He had been convicted. I don't understand, again, not slicing or dicing, but when Mr. Elfar himself agrees to a consent order for restrictions on his license, how would that then be the township's responsibility to somehow step forward and say, you don't have to have any restrictions. You filed for a new trial. You're getting a new trial, notwithstanding your consent to being restricted. Why would that be something that the municipality would be responsible for? That's Mr. Elfar's, I mean, Mr. Elfar's got skin in the game here. He's got a reason. I don't think it's a matter of burden. Was he seized? And I could enter a consent order because I know it's inevitable. I'm going to be restricted, and I get something better by consenting to it, but I'm still being restricted. I don't see it as a matter of whose burden is it. We're really looking at the factual matter, what happened to this person, what he seized. And I don't know why you're talking in terms of whose burden is it. It's just what happened to him. Well, if I may, Your Honor, it's not inevitable that he would be restricted and thus he entered into a consent order because maybe he got better terms than he would have. I don't agree with that, respectfully, because under the procedure in place, under the court rule and under State v. Robinson, he's entitled to a hearing about that in front of an independent judicial officer. So if Mr. Elphar is able to convince a municipal court judge that he doesn't need to be under any driving restrictions, then he'd do a lot better than the consent order. When he makes that calculation and then he moves for a new trial, at the point that that's granted, even as a constitutional matter, if the first conviction has not been vacated, how would it be possible for a state to go forward and conduct another trial while holding in place a conviction that has been brought into disrepute on appeal and where the judge has determined that an additional trial is necessary? Aren't you then subjecting a defendant to a second trial in violation of double jeopardy? I don't think so because, again, let me focus on this particular instance, if I may. This was a new trial based on a very limited issue involving discovery from other instances of police traffic stops and possibly muting the microphone and whether that would have some effect on the conviction. So given that limited scope of inquiry in this new trial and, again, I don't think that the fact that this conviction was not vacated is nothing. I think it's very significant because under the court rule... That's not correct. There is no nothing in this record. There is no order from a court. There's no pronouncement from a court from the bench. There's no nothing to suggest that this conviction was vacated. No judge ever said it. No court order ever said it. So to say it without any evidence of it is meaningless. It just didn't happen. And, of course, Mr. Elphar had the ability to go back to court and say, this is vacated now, remove all restrictions from my license. Mr. Elphar never did that. We can't really assume that Mr. Elphar didn't do that simply because he felt the best he could do was buy a consent order. He could have asked Judge English from the law division and said, Judge, I filed for either a de novo appeal, which he had, or I'm filing for a new trial, or if I got...and when the new trial was ordered, he could have gone to either the municipal court judge that he was in front of or back to Judge English and said, all the driving restrictions should be removed now because I stand in the shoes that I was in before I was convicted in February of 2017. That never happened. So, again, to suggest that it happened by something that's not in the record, by something that we're completely unaware of, I don't see how a court, respectfully, could make a ruling on and suggest that something was vacated when it wasn't. Again, the New Jersey court rule, it's rule 7-10, gives a judge on a motion for a new trial options. It's either you could either vacate the conviction, you could take new testimony, or, I'm not sure what the third option is, I stand here, I don't recall it, but the rule itself then, by its own terms, does not suggest in any sense that that previous conviction has been effected, either reversed, vacated, or whatever other permutation you might want to suggest would get Mr. Alfardo where he wanted to be. So, again, he didn't do that, and no court did it. And if we were then to go forward and say, look, anytime you file for de novo, and if you've only appeared once in court, even on a speeding ticket, now you're able to prosecute a civil action for malicious prosecution. Again, I think if the court rules in that way, the bulwark, which is the seizure, will be removed. And how I look at it is this. The fact that a seizure is required is basically the dam that holds back the tsunami, because the court can take judicial notice of this. There are over 500 municipal courts in New Jersey that adjudicate traffic matters, which these were, every week. The Municipal Court of Philadelphia must, and again, I'm sure that we can understand what that number is, they adjudicate traffic and misdemeanor cases, hundreds of them every week. And it's the seizure, as I suggest, that's the dam that will keep thousands of cases at bay. Any further questions from my colleagues? Is there any advantage to sending this back? I'm hearing that maybe you have rules in place, and there is some discretion on the part of the judge. Is your honor referring to the district judge? Just for clarification, the municipal court judge or the district judge? If you could help me on that, your honor. So, again, I'm not sure what rule your honor might be referring to, but I look at this as, and I focus on Davila. Mr. Elphar was released without travel restrictions. He didn't have to check in with pretrial services. He didn't have to post a bond. Those seem to be the essential considerations if we look at Gallo, Davila, and Black. There's an unreported case, Lentz, L-E-N-T-Z. I'm sure your honors are familiar with it. The approach has always been it's either those restrictions or a combination of those and having to go to court. I'm unaware of any decision by this circuit which would suggest merely having to go to court and attend your trial constitutes a seizure for the purposes of pleading a malicious prosecution case under Section 1983. And if we look at the complaint, the complaint merely alleges that Mr. Elphar was a subject of a warrantless arrest on July 4th at 2.55 a.m. We know that he was released. He alleges that he was held overnight. I don't, I think that's an exaggeration. He was released at 4 something in the morning. He was not present, he was never arraigned. He was not present in court until July 25th where nothing came up about penalties, restrictions, you better come back here, I'll issue a warrant for you if you don't show up. It was simply you need some discovery. The case was adjourned. Let's assume that he came back a few times between that and his trial. But again, I do think it's a matter, it's really a matter of public interest. And the defendants themselves have a very significant interest in coming back to court to defend themselves, to clear their name. It's part of what we expect citizens to do, to engage in the judicial process. It's not, it's really not a police officer, we know it's not a police officer hauling you back into court, you're not being physically restrained. Attending a trial is a different thing. Going to court should be looked at differently because it serves the public interest, not just Mr. Alfarez, it serves everybody's interest. And courts should not have to threaten people and lock people up just to ensure that they will come to court and be involved in the judicial process, the process of making a fair adjudication of a charge. Judge Rendon, do you have a question? I do not. Oh, okay. One other issue, just very briefly, I'd like to get your take on, which is the district court here treated the New Jersey Fourth Amendment seizure doctrine as coextensive with the federal. And the New Jersey Supreme Court seems to have recognized that there's greater protection, broader concept of seizure under the New Jersey Constitution. What is your position as to whether seizure is, has the same boundaries under the state constitution as under the federal? So I would answer that question by looking back to cases that were adjudicated under the New Jersey Civil Rights Act, which, as your Honor is aware, is the counterpart to Section 1983. It's simply the state version of, and some courts look at it as filling in some of the gaps that might be apparent in Section 1983. I'm unaware of any case under the New Jersey Civil Rights Act that holds that merely attending court for the purposes of adjudicating a traffic summons or a disorderly person's offense constitutes a seizure. I would go farther to say, your Honor, I'm unaware of any decision by a New Jersey court that holds that going to court for a seizure for any type of case, whether it be a felony, misdemeanor, or otherwise. So to really answer that question, I can't say that it's ever been decided. And I don't know of any basis where New Jersey may say that coming to court is different and does constitute a seizure. I don't think it's ever been adjudicated. And again, even if it has, I do think that our focus has to be on Third Circuit precedent, on the reported precedential decisions from this circuit. And I don't think that there's a case from this circuit that would agree to the proposition that New Jersey may say coming to court to adjudicate your summons constitutes a seizure. If it's your position that the New Jersey Constitution requires that there be a seizure in addition to lack of probable cause for a malicious prosecution claim, what's your best authority for that? Your Honor, I can't, as I stand here now, I cannot recite the authority for that. It's just my honest response would be that I deal with these cases routinely in my practice and with both claims under both Civil Rights, Section 1983 in the New Jersey Civil Rights Act. And I can't think of a case that could answer that as I'm standing here. I apologize for that. If the court wants me to submit something after the argument, I understand that there is a procedure for that. If the court requests it, of course, I'd be happy to comply with any question or interest of the court. But as I stand here now, I cannot answer that question with any sort of credibility. I just don't know. Okay. Thank you. Thank you. I'll give you a couple minutes. Thank you very much. So Mr. Schwartz said that courts shouldn't have to tell people to appear in court. But actually, to answer Judge Rendell's question, if you look at the summonses in the appendix of 565, they clearly state that you could be arrested if you don't show up for court. And against that backdrop, he then received 40 notices after that point. And no, the notices did not say you will be arrested, but he received a summons saying if you don't show up, you'll be arrested. If you get a notice, the assumption would be that if you don't show up for the new date, you could be arrested. So that's what the summons says. It's incorporated into the complaint. And that's standard language in the summons. On the issue of the vacation of the order versus the new trial and the de novo appeal, I want to separate two different things. Robertson addresses what happens when it comes back to the superior court. What we're talking about is what happened in the municipal court. And then there was a trial, and then there was the de novo appeal. If you look at the record at Appendix 541, Mr. Alford was resentenced. So, Judge Cross, to go to something you're saying about federal jeopardy, and perhaps I was too kind to humble about what actually happened here, but if it is true that he was continually convicted and he was continually subject to sentence, then his license was suspended for years under this analysis. And he was only supposed to be suspended for a few months. And he is resentenced by the second municipal court judge at Appendix 541. So we can clearly infer from this, no, there's no order, that the parties assumed that the conviction was vacated. And on the issue of the town having a burden, would the defendant have a burden to fix what happened? There are two different deprivations of liberty that attend the retrial, other than the appearances. The consent order, which I agree with Judge Rendell, he was compelled to enter, but more directly, he was suspended without condition in the database of the New Jersey DMV. That's pled in the complaint, it's in his abstract. Those are two different seizures. The consent order is less than what's in the database. When police pulled him over, and that did occur, it's alleged in the complaint, when police pulled him over, he was pulled over because they believed he was driving with a suspended license. That's why they pulled him over. And he had to show them this consent order saying, no, I'm special, I can drive between 9 to 5. That's what happened. On the issue of there being a dam breaking if an appearance is deemed to be sufficient for a seizure, first, as we already said at the outset of our argument, our position is that the bill is distinguishable, and we're talking about multiple appearances prior to trial. But having said that, as we set forth probably ad nauseum in our brief, the seizure element is not supposed to be the defining feature of this tort. Yes, for it to be constitutional tort, it has to have a basis in the Constitution, it has to have a hook, and the hook is seizure. But the defining element is supposed to be lack of probable cause. And in most cases, even if someone pays the $425 that it costs to file a federal complaint, in most cases, those cases will be dismissed based upon the fact that there's probably objective indicia of probable cause. The speeding ticket is the easy example. It's a calibrated gun. The courts will admit that it's of judicial notice that it's calibrated. Unless there's an actual dispute about whether the gun was properly calibrated, a federal complaint for a speeding ticket will probably be dismissed. And this theory that there's going to be more cases if our theory of the case is adopted, there's already a lot of malicious prosecution cases. And they are determined in large part on the existence or lack of probable cause. We're talking about a small sliver where you don't have super onerous pretrial restrictions, but you don't have none either. And that's really the sliver of cases we're talking about, where Mr. Elfar had what appears to be an excessive number of appearances for whatever reason. And if that's something that Heimdall wants to litigate, that it was his fault he had to appear so many times, that his lawyer was excessively aggressive, those may be factual issues for trial. They may also go to damages, as a number of these cases say, that the issue of seizure is not about the right to be in the courthouse but the access to damages. So that could be something that could be litigated as a matter of fact. Adrienne Dell? Yeah, I suggested to your colleague that if a motion for retrial is granted in a situation, and we were to say that conviction for purposes of seizure would follow up until that second conviction, is that a dam break situation? How often are motions for retrial granted? Would that be sufficient to cabin this situation? The first answer is yes, Your Honor, it would. And the second answer is, in my experience, which is not as much as Mr. Schwartz, I'm not a municipal court defender for the most part, but the retrial aspect is pretty rare. What's also very rare here is the procedural, obviously the procedural machinations of this case, where there was a retrial, there was a de novo appeal, and what Mr. Elfar did was he took the consent order so he could get the retrial. Like, if he went to the de novo appeal, what would have happened probably was that the court would have sent it back and said, well, there's this issue about the dash cams, which we haven't talked about much today. There's an issue about the dash cams. So the prosecutor said, let's just go back and retry the case and come back. So my answer to Your Honor is no, there would not be a dam break situation. There's just not any evidence in the record that this would lead to a deluge of malicious prosecution cases. And I'm sorry, go ahead. What about his view that Rule 2-10 is evidence that the sentence was not, that the conviction was not vacated? All that is evidence of is that, in theory, the municipal judge had discretion not to vacate the sentence. It's not evidence of what actually happened. And I would go back to how I opened my rebuttal, which is that if you believe Holmdel's position, Nesterov-Elfar was subject to penalties that are totally unlawful for DUI. I mean, if you believe their position, he was convicted for years. The judge is resentencing him in 2018, saying his license is suspended. I mean, he would have been suspended for over a year for DUI if it's true what they're saying. So the rule exists. It's clearly possible that a municipal judge could say, I'm not going to stay the sentence or I'm not going to vacate the conviction, but we have no evidence of record of what happened here. And the best evidence of what happened, aside from inferring from the statements in the transcripts, is what Judge Thornton says. She is the assignment judge for the county. She says the conviction was vacated. That's what she said. And there's nothing in the record to dispute that direct statement by the assignment judge saying that is what occurred. If Holmdel comes forward on a remand with facts that the conviction wasn't then so be it. But there's an absolute hole in the record on that point, and that should be explored. All right. Yeah, I understand the argument. I thank both counsel for their very helpful arguments today, and we will take this case under advisement. Thank you very much.